UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BOBBIE MAXWELL, JR.,

       Plaintiff,                             Hon. Janet T. Neff

v.                                                        Case No. 1:10-CV-404

CORRECTIONAL MEDICAL
SERVICES, et al.,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants Correctional Medical Services, Inc., Keith Ivens, M.D. and Bency Mathai, M.D.'s Motion to Dismiss. (Dkt. #11). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. Plaintiff was incarcerated in 1994, after which he "developed pain in both hips." Following his release in 2003, Plaintiff treated with Dr. Boon Cho Chang. The doctor initially prescribed therapy and medication, but when such proved unsuccessful Dr. Chang "recommended surgery." However, before Dr. Chang could locate a surgeon to perform surgery, Plaintiff was again incarcerated in July 2005.

In August 2005, Plaintiff was diagnosed with "moderately advanced bilateral hip degenerative changes, the right side greater than the left." X-rays of Plaintiff's hips, taken on September

21, 2007, revealed "advanced arthritic changes." On November 14, 2007, Plaintiff was diagnosed with "bilateral avascular necrosis of the hips," for which "bilateral hip replacement surgery" was recommended. Dr. Keith Ivens denied this recommendation because of Plaintiff's "pre-existing gun shot wounds." Dr. Ivens instead recommended "continuation of ambulation assistance devices." On March 11, 2008, Physician's Assistant, Celeste Fraser requested an MRI of Plaintiff's right hip. This request was denied by Dr. Bency Mathai.

On October 2, 2008, Physician's Assistant Hope Heebsh, noting that Plaintiff "failed conservative treatment," recommended that Plaintiff undergo bilateral hip replacement. This recommendation was rejected by Dr. Ivens, who instead recommended that Plaintiff's "pain be managed with maximum pain medication" and "hip strengthening." Physician's Assistant Heebsh also requested that Plaintiff be provided an air mattress. This request was denied by Dr. Jeffrey Stieve. Since December 23, 2008, Plaintiff "has been unable to walk and is confined to the use of a wheelchair." On February 9, 2009, Physician's Assistant Heebsh "ordered" that Plaintiff be permanently permitted to use a wheelchair. On July 17, 2009, Physician's Assistant Margaret Ouellette "ordered" that Plaintiff only be permitted to use a wheelchair "for long distances."

Plaintiff initiated this action on April 26, 2010, against Correctional Medical Services, Inc. (CMS), Prison Health Services, Inc. (PHS), Dr. Ivens, Physician's Assistant Ouellette, Dr. Steive, and Dr. Mathai. Plaintiff alleges that Defendants have violated his constitutional right to be free from cruel and unusual punishment. Plaintiff seeks injunctive and monetary relief. Defendants CMS, Ivens, and Mathai now move to dismiss Plaintiff's claims. Specifically, Defendant CMS claims that Plaintiff has failed to state a claim on which relief may be granted. Moreover, all three Defendants assert that Plaintiff has failed to properly exhaust administrative remedies.

**ANALYSIS**

I.        **Failure to State a Claim**

Plaintiff's claims against Defendant CMS appear to be based on the fact that they employed one or more of the individual defendants in this matter. In his complaint, Plaintiff makes no factual allegations against CMS, but instead simply asserts the conclusion that Defendants CMS and PHS "are vicariously liable for the actions of their employees." Defendant CMS asserts that Plaintiff's allegations fail to state a claim on which relief may be granted. The Court agrees.

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See Bower v. Federal Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

To prevail on a Rule 12(b)(6) motion, Defendant must demonstrate that it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. As the Supreme Court recently stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 545. As the Court subsequently explained:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals

> observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

Contrary to Plaintiff's assertion, CMS is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). To establish liability against CMS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a CMS policy, practice, or custom. *See Thomas*, 398 F.3d at 429.

To establish the existence of a policy, practice, or custom based on an allegation that CMS failed to act, as is the case here, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that CMS had notice or constructive notice of such; (3) that CMS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

Plaintiff appears to misunderstand this authority. Plaintiff asserts that Defendant's motion should be denied because he has alleged that CMS violated "the policy to provide quality health care." The question, however, is not whether CMS failed to provide quality health care (i.e., failed to comply with a certain policy), but instead whether such failure was itself the direct result of a policy,

practice, or custom. Plaintiff does not allege in his complaint that his constitutional rights were violated by (or because of) any policy, practice, or custom. Likewise, he has not alleged any facts from which such can reasonably be inferred. Thus, Plaintiff has failed to state a claim against CMS. Accordingly, the undersigned recommends that Defendant CMS' motion to dismiss be granted.

**II.          Exhaustion**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner

is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed

in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill*, 372 F.3d at 232.

In support of their motion, Defendants have provided copies of five grievances that Plaintiff has pursued. Defendants assert that none of these grievances properly exhaust the claims articulated against them in Plaintiff's complaint. Plaintiff has not alleged that he filed any other grievances that are relevant in this matter.

### A. Grievance ACF-2009-05-0407-12F3

Plaintiff filed this grievance on May 12, 2009, alleging that Defendant Ouellette denied his request for pain medication on May 8, 2009. (Dkt. #11, Exhibit C). While this grievance was pursued through Step III of the grievance procedure, it fails to exhaust Plaintiff's claims against Defendants CMS, Ivens, or Mathai.

### B. Grievance ACF-2009-06-0524-12D4

Plaintiff filed this grievance on June 23, 2009, alleging that he was "forced out" of Defendant Ouellette's office earlier that day. (Dkt. #11, Exhibit C). While this grievance was pursued through Step III of the grievance procedure, it fails to exhaust Plaintiff's claims against Defendants CMS, Ivens, or Mathai.

### C. Grievance ACF-2009-12-1187-12C2

Plaintiff filed this grievance on December 10, 2009, alleging that he was denied placement in the Assaultive Offender Program (AOP). (Dkt. #11, Exhibit C). While this grievance was

pursued through Step III of the grievance procedure, it fails to exhaust Plaintiff's claims against Defendants CMS, Ivens, or Mathai.

### D. Grievance ACF-2009-07-0566-03F

Plaintiff filed this grievance on July 7, 2009, challenging a decision by Pat Merlau, R.N., to "restrict [his] wheelchair use." (Dkt. #11, Exhibit C). While this grievance was pursued through Step III of the grievance procedure, it fails to exhaust Plaintiff's claims against Defendants CMS, Ivens, or Mathai.

### E. Grievance ACF-2008-12-1151-12D1

Plaintiff filed this grievance on December 27, 2008, alleging in an attached grievance statement that "on December 23, 2008, I received verbal confirmation from Sandra K. Powell, R.N., that my request for Special Accommodation, Pain Medication and Hip Replacement surgery…was 'Denied' on [October 22, 2008], by Corrections Medical Services/U. of M." (Dkt. #11, Exhibit C). Plaintiff further alleged that the decision to not authorize hip replacement surgery constituted deliberate indifference to his serious medical needs. Plaintiff pursued this grievance through all three steps of the grievance process. Plaintiff asserts that this grievance properly exhausts his claims against Defendants CMS,[1] Ivens, and Mathai.

### 1. Defendant Ivens

---

[1] As discussed above, the Court recommends that Plaintiff's claims against CMS be dismissed for failure to state a claim on which relief may be granted.

With respect to Plaintiff's claims against Defendant Ivens, the Court only partly agrees. In his complaint, Plaintiff advances only two allegations against Defendant Ivens: (1) Defendant Ivens denied the November 14, 2007 recommendation that Plaintiff undergo hip replacement surgery; and (2) on October 22, 2008, Defendant Ivens denied a second recommendation that Plaintiff undergo hip replacement surgery.

While Plaintiff must comply with the MDOC's procedural requirements for filing and pursuing grievances, his efforts to grieve a particular matter are sufficient where such "gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 Fed. Appx. 738, 740 (6th Cir., June 3, 2009). Plaintiff identifies in his grievance statement that Dr. Ivens was employed by CMS. There is neither evidence nor allegation that more than one decision was rendered on October 22, 2008, to deny a recommendation that Plaintiff undergo hip replacement surgery. Thus, Defendants cannot argue that they were unsure which October 22, 2008 decision Plaintiff was challenging. In sum, the language from Plaintiff's grievance statement, quoted above, is sufficient to have put prison officials on notice that Plaintiff was grieving Defendant Ivens' October 22, 2008 decision denying the recommendation that he undergo hip replacement surgery.

The Court reaches a different conclusion regarding Plaintiff's claim that Defendant Ivens denied the November 14, 2007 recommendation that he undergo hip replacement surgery. The grievance in question clearly concerns Defendant Ivens' October 22, 2008 action. While Plaintiff, in his grievance statement, makes mention of the November 14, 2007 incident, the grievance cannot fairly be said to have put the recipients on notice that Plaintiff was challenging Defendant Ivens' November

2007 conduct given the clear focus of the grievance as well as the fact that the November 2007 incident was more than one year distant.

Accordingly, the Court recommends that Plaintiff's claim that Defendant Ivens denied the November 14, 2007 recommendation that he undergo hip replacement surgery be dismissed without prejudice for failure to exhaust administrative remedies. The Court further recommends that Defendant Ivens' motion to dismiss, for failure to properly exhaust administrative remedies be denied as to Plaintiff's claim that on October 22, 2008, Defendant Ivens denied a recommendation that Plaintiff undergo hip replacement surgery.

2. Defendant Mathai

In his complaint, Plaintiff asserts a single claim against Dr. Mathai, namely that the doctor denied a March 11, 2008 recommendation that Plaintiff undergo an MRI examination. The only reference to Dr. Mathai in this grievance is the assertion that "Correctional Medical Services Staff; Dr. Mathai. . .are allowing affiant Maxwell #240605 to suffer. . .pain needlessly when relief is readily available." This statement cannot reasonably be said to have put the recipients on notice that Plaintiff was challenging a months old decision by Dr. Mathai to reject a recommendation that Plaintiff undergo an MRI examination. Accordingly, the Court recommends that Plaintiff's claim against Defendant Mathai be dismissed without prejudice for failure to exhaust administrative remedies.

**CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants Correctional Medical Services, Inc., Keith Ivens, M.D. and Bency Mathai, M.D.'s Motion to Dismiss</u>,

(dkt. #11), be **granted in part and denied in part**. Specifically, the undersigned recommends that: (1) Plaintiff's claims against Defendant CMS be dismissed for failure to state a claim on which relief may be granted; (2) Plaintiff's claims against Defendant Mathai be dismissed without prejudice for failure to exhaust administrative remedies; (3) Plaintiff's claim that Defendant Ivens denied a November 14, 2007 recommendation that he undergo hip replacement surgery be dismissed without prejudice for failure to exhaust administrative remedies; and (4) Plaintiff's claim that on October 22, 2008, Defendant Ivens denied a second recommendation that Plaintiff undergo hip replacement surgery be permitted to go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 18, 2011  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge