UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BOBBIE MAXWELL, JR.,

       Plaintiff,                                 Hon. Janet T. Neff

v.                                                     Case No. 1:10-CV-404

CORRECTIONAL MEDICAL
SERVICES, et al.,

       Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants Prison Health Services, Inc. and Margaret Ouellette's Motion to Dismiss/Motion for Summary Judgment</u>. (Dkt. #12). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

The following allegations are contained in Plaintiff's complaint. Plaintiff was incarcerated in 1994, after which he "developed pain in both hips." Following his release in 2003, Plaintiff treated with Dr. Boon Cho Chang. The doctor initially prescribed therapy and medication, but when such proved unsuccessful Dr. Chang "recommended surgery." However, before Dr. Chang could locate a surgeon to perform surgery, Plaintiff was again incarcerated in July 2005.

In August 2005, Plaintiff was diagnosed with "moderately advanced bilateral hip degenerative changes, the right side greater than the left." X-rays of Plaintiff's hips, taken on September

21, 2007, revealed "advanced arthritic changes." On November 14, 2007, Plaintiff was diagnosed with "bilateral avascular necrosis of the hips," for which "bilateral hip replacement surgery" was recommended. Dr. Keith Ivens denied this recommendation because of Plaintiff's "pre-existing gun shot wounds." Dr. Ivens instead recommended "continuation of ambulation assistance devices." On March 11, 2008, Physician's Assistant, Celeste Fraser requested an MRI of Plaintiff's right hip. This request was denied by Dr. Bency Mathai.

On October 2, 2008, Physician's Assistant Hope Heebsh, noting that Plaintiff "failed conservative treatment," recommended that Plaintiff undergo bilateral hip replacement. This recommendation was rejected by Dr. Ivens, who instead recommended that Plaintiff's "pain be managed with maximum pain medication" and "hip strengthening." Physician's Assistant Heebsh also requested that Plaintiff be provided an air mattress. This request was denied by Dr. Jeffrey Stieve. Since December 23, 2008, Plaintiff "has been unable to walk and is confined to the use of a wheelchair." On February 9, 2009, Physician's Assistant Heebsh "ordered" that Plaintiff be permanently permitted to use a wheelchair. On July 17, 2009, Physician's Assistant Margaret Ouellette "ordered" that Plaintiff only be permitted to use a wheelchair "for long distances."

Plaintiff initiated this action on April 26, 2010, against Correctional Medical Services, Inc. (CMS), Prison Health Services, Inc. (PHS), Dr. Ivens, Physician's Assistant Ouellette, Dr. Steive, and Dr. Mathai. Plaintiff alleges that Defendants have violated his constitutional right to be free from cruel and unusual punishment. Plaintiff seeks injunctive and monetary relief. Defendants PHS and Ouellette now move for relief. Specifically, Defendants PHS and Ouellette claim that Plaintiff has failed to state a claim on which relief may be granted. Defendant PHS also seeks relief on the ground that Plaintiff has failed to properly exhaust administrative remedies. Likewise, Defendant Ouellette also

seeks relief on the ground that Plaintiff has failed to properly exhaust administrative remedies as to all but one of the claims asserted in his complaint.

## **ANALYSIS**

**I.        Failure to State a Claim - Defendant Prison Health Services**

Plaintiff's claims against Defendant PHS appear to be based on the fact that they employed one or more of the individual defendants in this matter. In his complaint, Plaintiff makes no factual allegations against PHS, but instead simply asserts the conclusion that Defendants CMS and PHS "are vicariously liable for the actions of their employees." Defendant PHS asserts that Plaintiff's allegations fail to state a claim on which relief may be granted. The Court agrees.

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See Bower v. Federal Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

To prevail on a Rule 12(b)(6) motion, Defendant must demonstrate that it appears beyond doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. As the Supreme Court recently stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 545. As the Court subsequently explained:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

> do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Ashcroft v. Iqbal*, ____ U.S. ____, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

Contrary to Plaintiff's assertion, PHS is not vicariously liable for the actions of its employees and, therefore, "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)); *Street v. Corr. Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed. Appx. 459, 465 (6th Cir., Mar. 26, 2001). To establish liability against PHS, Plaintiff must demonstrate that he suffered a violation of his federal rights "because of" a PHS policy, practice, or custom. *See Thomas*, 398 F.3d at 429.

To establish the existence of a policy, practice, or custom based on an allegation that PHS failed to act, as is the case here, Plaintiff must demonstrate the following: (1) the existence of a "clear and persistent pattern" of illegal activity; (2) that PHS had notice or constructive notice of such; (3) that PHS tacitly approved of the illegal activity, such that "their deliberate indifference in their failure to act can be said to amount to an official policy of inaction" and (4) that the policy, practice, or custom in question was the "moving force" or "direct causal link" in the constitutional deprivation. *Id.* at 429 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996)).

Plaintiff appears to misunderstand this authority. Plaintiff asserts that Defendant's motion should be denied because he has alleged that PHS violated "the policy to provide quality health care." The question, however, is not whether PHS failed to provide quality health care (i.e., failed to comply with a certain policy), but instead whether such failure was itself the direct result of a policy, practice, or custom. Plaintiff does not allege in his complaint that his constitutional rights were violated by (or because of) any policy, practice, or custom. Likewise, he has not alleged any facts from which such can reasonably be inferred. Thus, Plaintiff has failed to state a claim against PHS. Accordingly, the undersigned recommends that Defendant PHS' motion to dismiss be granted.

**II.         Failure to State a Claim - Defendant Ouellette**

In his complaint, Plaintiff makes various claims against Defendant Ouellette. Plaintiff asserts that on July 17, 2009, Defendant Ouellette "ordered" that he only be permitted to use a wheelchair "for long distances." Plaintiff also alleges that during the time period encompassed by this action, Defendant Ouellette refused to provide him with an air mattress, back brace, and adequate pain medication. Plaintiff alleges that Defendant Ouellette refused to request that he be provided hip replacement surgery. Plaintiff alleges that Defendant Ouellette is "often sarcastic and defiant" and on one occasion forced Plaintiff to leave her office. Defendant Ouellette argues that she is entitled to relief because Plaintiff has failed to state a claim upon which relief may be granted. The Court only partly agrees.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v.*

*Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). A serious medical need has been defined as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

To the extent, however, that Plaintiff merely disagrees with the treatment he received, or asserts that he received negligent care, Defendant is entitled to summary judgment. *See Williams v.*

*Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995) (if prison officials responded reasonably to a substantial risk to an inmate's health or safety, they may avoid liability – even if the harm ultimately was not averted).

To the extent that Plaintiff claims that Defendant Ouellette is "often sarcastic and defiant" and on one occasion forced him to leave her office, such fail to state a claim on which relief may be granted. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (the Eighth Amendment is violated only by "extreme deprivations" that deprive the prisoner of the "minimal civilized measure of life's necessities"); *Lee v. Young*, 2000 WL 1720930 at *3 (6th Cir., Nov. 6, 2000) ("verbal abuse cannot state an Eighth Amendment claim").

With respect to Plaintiff's other claims, however, the Court finds that such state a claim upon which relief may be granted. As previously noted, to survive a motion to dismiss for failure to state a claim, the factual allegations in Plaintiff's complaint must "raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." Taking Plaintiff's allegations as true, such would support a finding that Defendant Ouelette violated Plaintiff's right to be free from cruel and unusual punishment.

The Court recommends, therefore, that Defendant Ouelette's motion to dismiss Plaintiff's claims for failure to state a claim be granted as to the claims that Defendant is "often sarcastic and defiant" and on one occasion forced Plaintiff to leave her office, but denied as to Plaintiff's other claims.

**III.** **Exhaustion**

Defendant Ouellette asserts that Plaintiff has failed to properly exhaust administrative remedies as to all but one of the claims asserted in his complaint.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, it is appropriate to seek guidance from the substantively similar exhaustion rules applicable to petitions for writ of habeas corpus. *See Woodford,* 548 U.S. at 88. In the habeas context, a petitioner is required to properly present his federal claims through one complete round of the State's established appellate review process. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). To "'protect the

integrity' of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies." *Id.* at 848 (citation omitted). The Supreme Court has stated that in the habeas context, "the sanction for failing to exhaust properly (preclusion of federal review) is called procedural default." *Woodford,* 548 U.S. at 92. To determine whether a habeas petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir.2004), *cert. denied,* 544 U.S. 928 (2005); *accord Lancaster v. Adams,* 324 F.3d 423, 436-37 (6th Cir.2003).

Under the procedural default component of § 1997e(a), a prisoner's claims are procedurally defaulted if he fails to complete the administrative review process in accordance with the deadlines and other applicable procedural rules and prison officials actually relied upon the procedural rule to bar review of the grievance. *See Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir.2005), *cert. denied,* 126 S.Ct. 2978 (2006); *Spruill v. Gillis,* 372 F.3d 218, 222 (3rd Cir.2004) (holding that "the determination whether a prisoner has 'properly' exhausted a claim (for procedural default purposes) is made by evaluating the prisoner's compliance with the prison's administrative regulations"). Moreover, just as procedural default in the federal habeas corpus context must be predicated on an adequate and independent state ground, the procedural requirements of a prison grievance system may not be imposed in a way that offends the United States Constitution or the intended purposes of § 1997e(a). *See Spruill,* 372 F.3d at 232.

In support of her motion, Defendant Ouellette[1] has provided copies of five grievances that Plaintiff has pursued. Plaintiff has not alleged that he filed any other grievances that are relevant in this matter.

### A. Grievance ACF-2008-12-1151-12D1

Plaintiff filed this grievance on December 27, 2008, challenging Defendant Ivens' October 22, 2008 decision rejecting a request that Plaintiff undergo hip replacement surgery. (Dkt. #12, Exhibit B). Defendant Ouellette is not referenced in this grievance. While this grievance was pursued through Step III of the grievance procedure, it fails to exhaust any of Plaintiff's claims against Defendant Ouellette.

### B. Grievance ACF-2009-05-0407-12F3

Plaintiff filed this grievance on May 12, 2009, alleging that Defendant Ouellette denied his request for pain medication on May 8, 2009. (Dkt. #12, Exhibit B). This grievance was pursued through Step III of the grievance process. Defendant Ouelette concedes that this grievance exhausts the claim that on May 8, 2009, she denied Plaintiff's request for pain medication.

### C. Grievance ACF-2009-06-0524-12D4

Plaintiff filed this grievance on June 23, 2009, alleging that Defendant Ouellette was unprofessional and forced him to leave her office earlier that day. (Dkt. #12, Exhibit B). As discussed above, however, this allegation fails to state a claim on which relief may be granted. Plaintiff asserts

---

[1] As discussed above, the Court recommends that Plaintiff's claims against PHS be dismissed for failure to state a claim on which relief may be granted.

that this grievance also properly exhausts his claim that Defendant Ouellette denied him appropriate pain medication as well as "other medical needs." While Plaintiff asserts in this grievance that he was attempting to discuss his medical care with Defendant Ouellette, Plaintiff does not allege in this grievance that Defendant Ouellette denied him appropriate medical care. The only allegation in this grievance against Defendant Ouellette is that she was unprofessional and forced him to leave her office. Thus, to the extent that Plaintiff has asserted in his complaint allegations which state a claim on which relief may be granted, none are properly exhausted by this particular grievance.

    D.  Grievance ACF-2009-12-1187-12C2

Plaintiff filed this grievance on December 10, 2009, alleging that he was denied placement in the Assaultive Offender Program (AOP). (Dkt. #12, Exhibit B). While this grievance was pursued through Step III of the grievance procedure, it fails to exhaust any claim Plaintiff has asserted against Defendant Ouellette.

E.     Grievance ACF-2009-07-0566-03F

Plaintiff filed this grievance on July 7, 2009, challenging a decision by Pat Merlau, R.N., to "restrict [his] wheelchair use." (Dkt. #12, Exhibit B). Neither the Step I grievance nor the grievance statement attached thereto make any mention of Defendant Ouelette or allege facts that can fairly be said to implicate Defendant Ouellette. Plaintiff nevertheless asserts that this grievance serves to properly exhaust claims he has asserted against Defendant Ouelette.

In support of his position, Plaintiff cites to a recent decision from the United States District Court for the Eastern District of Michigan for the proposition that "[a] grievance is not rejected for failure to name specific individuals." *See Hall v. Raja*, 2010 WL 1258204 (E.D. Mich., Mar. 30, 2010). While this statement is not necessarily inaccurate, it is certainly incomplete. As the *Hall* court recognized, while "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances," the prisoner's grievances must nonetheless "g[i]ve prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.* at *3-4 (citations omitted). Plaintiff's grievance fails this standard.

Neither the Step I grievance nor the grievance statement attached thereto make any mention of Defendant Ouelette. The grievance likewise does not allege facts that can reasonably be said to implicate Defendant Ouellette in any alleged misconduct or wrongdoing. Rather, the grievance challenges only Pat Merlau's decision to restrict Plaintiff's wheelchair use. Thus, this grievance cannot fairly be said to put the recipient on notice that Plaintiff was challenging any conduct by Defendant Ouellette. That Plaintiff made mention of Defendant Ouellette in his Step II and Step III appeals is not relevant as Plaintiff is required to properly grieve his claims through all three steps of the grievance

process.  *See* Michigan Department of Corrections Policy Directive 03.02.130 ¶ B (eff. July 9, 2007) ("[c]omplaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies *only when filed as a grievance through all three steps of the grievance process*").  This grievance, therefore, fails to exhaust any claim Plaintiff has asserted against Defendant Ouellette.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that <u>Defendants Prison Health Services, Inc. and Margaret Ouellette's Motion to Dismiss/Motion for Summary Judgment</u>, (dkt. #12), be **granted in part and denied in part**. Specifically, the undersigned recommends that Plaintiff's claims against Defendant PHS be dismissed for failure to state a claim on which relief may be granted. It is further recommended that Defendant Ouelette's motion to dismiss for failure to state a claim be granted as to the claims that Defendant is "often sarcastic and defiant" and on one occasion forced Plaintiff to leave her office and denied as to Plaintiff's other claims. Finally, the undersigned recommends that Plaintiff's remaining claims against Defendant Ouellette, except for his claim that on May 8, 2009, Defendant Ouellette denied his request for pain medication, be dismissed without prejudice for failure to properly exhaust administrative remedies.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: January 18, 2011

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge