UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBIE MAXWELL, JR.,

    Plaintiff,                            Hon. Janet T. Neff

v.                                          Case No. 1:10-CV-404

CORRECTIONAL MEDICAL
SERVICES, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Ouellette's Motion for Summary Judgment. (Dkt. #50). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint. Plaintiff was incarcerated in 1994, after which he "developed pain in both hips." Following his release in 2003, Plaintiff treated with Dr. Boon Cho Chang. The doctor initially prescribed therapy and medication, but when such proved unsuccessful Dr. Chang "recommended surgery." However, before Dr. Chang could locate a surgeon to perform surgery, Plaintiff was again incarcerated in July 2005.

In August 2005, Plaintiff was diagnosed with "moderately advanced bilateral hip degenerative changes, the right side greater than the left." X-rays of Plaintiff's hips, taken on September 21, 2007, revealed "advanced arthritic changes." On November 14, 2007, Plaintiff was diagnosed with

"bilateral avascular necrosis of the hips," for which "bilateral hip replacement surgery" was recommended. Dr. Keith Ivens denied this recommendation because of Plaintiff's "pre-existing gun shot wounds." Dr. Ivens instead recommended "continuation of ambulation assistance devices." On March 11, 2008, Physician's Assistant Celeste Fraser requested an MRI of Plaintiff's right hip. This request was denied by Dr. Bency Mathai.

On October 2, 2008, Physician's Assistant Hope Heebsh, noting that Plaintiff "failed conservative treatment," recommended that Plaintiff undergo bilateral hip replacement. On October 22, 2008, Dr. Ivens rejected this recommendation, directing instead that Plaintiff's "pain be managed with maximum pain medication" and "hip strengthening." Physician's Assistant Heebsh also requested that Plaintiff be provided an air mattress. This request was denied by Dr. Jeffrey Stieve. Since December 23, 2008, Plaintiff "has been unable to walk and is confined to the use of a wheelchair." On February 9, 2009, Physician's Assistant Heebsh "ordered" that Plaintiff be permanently permitted to use a wheelchair. On July 17, 2009, Physician's Assistant Margaret Ouellette "ordered" that Plaintiff only be permitted to use a wheelchair "for long distances."

Plaintiff initiated this action on April 26, 2010, against Correctional Medical Services, Inc. (CMS), Prison Health Services, Inc. (PHS), Dr. Ivens, Physician's Assistant Ouellette, Dr. Steive, and Dr. Mathai. Plaintiff alleges that Defendants have violated his constitutional right to be free from cruel and unusual punishment. Plaintiff seeks injunctive and monetary relief. Plaintiff's claims against Defendants CMS, PHS, Stieve, and Mathai have since been dismissed. The undersigned has also recently recommended that Plaintiff's claims against Defendant Ivens be dismissed. Plaintiff's claims against Defendant Ouellette have also previously been dismissed save a single claim. Specifically, the only claim remaining against Defendant Ouellette is that on May 8, 2009, Plaintiff submitted a request

for pain medication which Ouellette denied. (Dkt. #24, 39). Defendant Ouellette now moves for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir.

2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations."  *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof  faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

As noted above, the only claim remaining in this matter against Defendant Ouellette is that on May 8, 2009, Plaintiff submitted a request for pain medication which Ouellette denied thereby violating Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison*

*v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of her motion for summary judgment, Defendant Ouellette has submitted an affidavit as well as portions of Plaintiff's medical records. (Dkt. #50, Exhibits C-D). This evidence

reveals the following. On February 9, 2009, Plaintiff was examined by Physician's Assistant Hope Heebsh. Plaintiff reported that he was experiencing right hip pain. The matter was referred to the facility's Pain Management Committee. On March 2, 2009, Plaintiff was examined by Physician's Assistant Ouellette. Plaintiff reported that he "is able to perform activities of daily living but is experiencing some loss of mobility." Plaintiff requested "adequate pain medication." Ouellette prescribed a 10-day supply of Ultram[1] for Plaintiff. Then existing policy prevented medical care providers from prescribing more than a 10-day supply of Ultram without the preapproval of the Regional Medical Officer.

On March 6, 2009, Defendant Ouellette submitted a "Consultation Request" to the Pain Management Clinic to "determine an effective and appropriate pain management regimen" to treat Plaintiff's pain. On March 25, 2009, Plaintiff requested additional Ultram. Defendant Ouellette informed Plaintiff that she was awaiting a decision from the Pain Management Committee regarding her Consultation Request. On April 3, 2009, Defendant Ouellette prescribed another 10-day supply of Ultram to Plaintiff.

On April 8, 2009, Plaintiff was examined by nurse Kay Leas. Plaintiff requested that he be given a back brace. This request was denied because Plaintiff "did not fit the criteria for the back brace per MDOC protocols." On April 23, 2009, Plaintiff submitted a request for additional pain medication. On May 6, 2009, Defendant Ouellette submitted a request to the Regional Medical Officer to approve a 30-day supply of Ultram for Plaintiff pending a decision by the Pain Management Committee. This request was denied, as the Regional Medical Officer instead suggested that Plaintiff be prescribed an alternative medication regimen. On May 8, 2009, Plaintiff submitted a request for

---

[1] Ultram is a "narcotic-like pain reliever. . .used to treat moderate to severe pain." *See* Ultram, available at http://www.drugs.com/ultram.html (last visited on January 30, 2012).

"pain medication." On May 12, 2009, Defendant Ouellette informed Plaintiff that the Regional Medical Officer declined to approve further prescriptions for Ultram and had instead directed that he be prescribed an alternative medication regimen.

On May 29, 2009, Plaintiff was examined by Defendant Ouellette. Plaintiff complained that he was experiencing back pain, but Ouellette observed Plaintiff "squatting before he came into the examination room." Defendant Ouellette further observed that Plaintiff "was able to move and transfer without substantial difficulty despite his somatic complaints." Plaintiff agreed to "try" the medication regimen suggested by the Regional Medical Officer.

The evidence submitted by Defendant Ouellette demonstrates that while Plaintiff may have been experiencing a serious medical need, Defendant Ouellette responded reasonably thereto. Defendant Ouellette prescribed Plaintiff pain medication during the relevant time period. She requested approval from the Regional Medical Officer to provide Plaintiff with even more pain medication. Defendant Ouellette also requested that the Pain Management Committee evaluate Plaintiff's condition so as to "determine an effective and appropriate pain management regimen" to treat Plaintiff's pain. Specifically, with respect to Plaintiff's May 8, 2009 request for additional pain medication, the incident which comprises the sole claim remaining in this case, such was denied by the Regional Medical Officer who instead instructed Defendant Ouellette to provide Plaintiff with an alternative medication regimen. Thus, to the extent that Defendant Ouellette can be said to have denied Plaintiff's May 8, 2009 request for additional pain medication, such was reasonable as a physician in a position of authority over Ouellette had instructed that Plaintiff instead be treated with a different medication regimen.

In response to Defendant Ouellette's motion for summary judgment, Plaintiff has submitted the following: (1) an email from defense counsel requesting concurrence in the present

motion; (2) an email notifying Plaintiff's counsel of the filing of the present motion; (3) a copy of the portion of the grievance Plaintiff submitted concerning the sole claim remaining in this case; and (4) copies of several pages of Plaintiff's complaint. (Dkt. #56). Such submissions utterly fail to counter the evidence submitted by Defendant Ouellette which clearly demonstrates that she provided Plaintiff with medical care that was reasonable under the circumstances. It is clear that Plaintiff is simply dissatisfied with the quality of the medical care he received. As discussed above, however, such claims do not implicate the Eighth Amendment, but instead sound in state tort law. Accordingly, the undersigned recommends that Defendant Ouellette's motion for summary judgment be **granted**.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendant Ouellette's Motion for Summary Judgment, (dkt. #50), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: February 10, 2012         /s/ Ellen S. Carmody
                                ELLEN S. CARMODY
                                United States Magistrate Judge