UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BOBBIE MAXWELL, JR.,

    Plaintiff,                                      Hon. Janet T. Neff

v.                                                      Case No. 1:10-CV-404

CORRECTIONAL MEDICAL
SERVICES, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

        This matter is before the Court on <u>Defendant Ivens' Motion for Summary Judgment</u>. (Dkt. #86). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this matter terminated.

## BACKGROUND

        The following allegations are contained in Plaintiff's complaint. Plaintiff was incarcerated in 1994, after which he "developed pain in both hips." Following his release in 2003, Plaintiff treated with Dr. Boon Cho Chang. The doctor initially prescribed therapy and medication, but when such proved unsuccessful Dr. Chang "recommended surgery." However, before Dr. Chang could locate a surgeon to perform surgery, Plaintiff was again incarcerated in July 2005.

        In August 2005, Plaintiff was diagnosed with "moderately advanced bilateral hip degenerative changes, the right side greater than the left." X-rays of Plaintiff's hips, taken on September

21, 2007, revealed "advanced arthritic changes." On November 14, 2007, Plaintiff was diagnosed with "bilateral avascular necrosis of the hips," for which "bilateral hip replacement surgery" was recommended. Dr. Keith Ivens denied this recommendation because of Plaintiff's "pre-existing gun shot wounds." Dr. Ivens instead recommended "continuation of ambulation assistance devices." On March 11, 2008, Physician's Assistant Celeste Fraser requested an MRI of Plaintiff's right hip. This request was denied by Dr. Bency Mathai.

On October 2, 2008, Physician's Assistant Hope Heebsh, noting that Plaintiff "failed conservative treatment," recommended that Plaintiff undergo bilateral hip replacement. On October 22, 2008, Dr. Ivens rejected this recommendation, directing instead that Plaintiff's "pain be managed with maximum pain medication" and "hip strengthening." Physician's Assistant Heebsh also requested that Plaintiff be provided an air mattress. This request was denied by Dr. Jeffrey Stieve. Since December 23, 2008, Plaintiff "has been unable to walk and is confined to the use of a wheelchair." On February 9, 2009, Physician's Assistant Heebsh "ordered" that Plaintiff be permanently permitted to use a wheelchair. On July 17, 2009, Physician's Assistant Margaret Ouellette "ordered" that Plaintiff only be permitted to use a wheelchair "for long distances."

Plaintiff initiated this action on April 26, 2010, against Correctional Medical Services, Inc. (CMS), Prison Health Services, Inc. (PHS), Dr. Ivens, Physician's Assistant Ouellette, Dr. Steive, and Dr. Mathai. Plaintiff alleges that Defendants violated his constitutional right to be free from cruel and unusual punishment. Plaintiff seeks injunctive and monetary relief. Plaintiff's claims have all been dismissed save his claim that on November 14, 2007, Defendant Ivens denied the recommendation that Plaintiff undergo hip surgery. Defendant Ivens now moves for summary judgment as to Plaintiff's remaining claim.

**SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## **ANALYSIS**

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Rouster v. County of Saginaw*, - - - F.3d - - -, 2014 WL 1378190 at *6 (6th Cir., Apr. 9, 2014) ("a plaintiff alleging deliberate indifference must show more than negligence of the misdiagnosis of an ailment"); *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment").

Plaintiff's medical records reveal the following. X-rays of Plaintiff's lumbar spine, taken November 6, 2002, were "normal." (Dkt. #88 at ID#1519). X-rays of Plaintiff's left hip and pelvis, taken December 20, 2005, revealed "degenerative change" with "[n]o evidence of fracture or acute osseous abnormality [or] intrinsic pelvic abnormality." (Dkt. #88 at ID#1522).

Treatment notes dated January 3, 2007, indicate that Plaintiff was receiving pain medication. (Dkt. #88 at ID#1535). On February 3, 2007, Plaintiff reported that a recent pain injection he received "does work" in relieving the pain in his left lower extremity. (Dkt. #88 at ID#1542). A July

13, 2007 examination revealed that Plaintiff "demonstrated essentially no mobility issues." (Dkt. #88 at ID#1570). Treatment notes dated August 23, 2007, indicate that Plaintiff was provided a ground floor and bottom bunk accommodation. (Dkt. #88 at ID#1577). Treatment notes dated August 29, 2007, indicate that Plaintiff was able to ambulate with use of a cane. (Dkt. #88 at ID#1580). Treatment notes dated September 18, 2007, likewise indicated that Plaintiff was able to ambulate with use of a cane. (Dkt. #88 at ID#1584).

X-rays of Plaintiff's pelvis and hips, taken September 21, 2007, revealed "advanced arthritic changes. . .involving the articulating sites of both hips," but "[n]o evidence of an acute displaced fracture or acute osseous abnormalities." (Dkt. #88 at ID#1521). Moreover, "the integrity of the femoral head [was] maintained." (Dkt. #88 at ID#1521). On October 30, 2007, Plaintiff reported that he was experiencing "no change in functional capacity." (Dkt. #88 at ID#1599).

On November 14, 2007, Plaintiff was examined by Dr. Khawaja Ikram. (Dkt. #88 at ID#1613-14). Plaintiff reported that he was experiencing hip pain and was "unable to ambulate without assistive devices." (Dkt. #88 at ID#1613). An examination revealed that Plaintiff was experiencing "decreased [range of motion] of both outer hips," but no evidence of neurologic or vascular compromise. (Dkt. #88 at ID#1613). The doctor further observed that Plaintiff "is able to ambulate with a cane." (Dkt. #88 at ID#1613). X-rays revealed "degenerative changes to the bilateral hips with avascular necrosis."[1] (Dkt. #88 at ID#1613). Dr. Ikram recommended that Plaintiff undergo bilateral hip replacement, but cautioned Plaintiff that "because of his age, he would have to undergo multiple revisions." (Dkt. #88 at ID#1614).

---

[1] Avascular necrosis is "the death of bone tissue due to a lack of blood supply." *See* Avascular necrosis, available at http://www.mayoclinic.org/diseases-conditions/avascular-necrosis/basics/definition/con-20025517 (last visited on May 8, 2014).

In support of his motion for summary judgment, Defendant Ivens has submitted an affidavit in which he asserts the following. (Dkt. #86, Exhibit B). Ivens is a licensed medical doctor and was involved in Plaintiff's care on only one occasion, November 27, 2007. As of this date, Ivens functioned as a Utilization Review Manager which required him to "review the specialty consultation recommendation by Dr. Ikram. . .and determine whether the criteria for a total bilateral hip replacement was met." Dr. Ivens determined, in the exercise of his professional medical judgment, that "the criteria were not met for Plaintiff to receive a total bilateral hip replacement." Dr. Ivens determined that "less invasive and more efficacious medical alternatives were available to Plaintiff at that time."

Dr. Ivens concluded, based on the available medical evidence, that "Plaintiff's hip condition could be effectively managed with ambulation assistance devices, and with pain medication." The doctor further concluded that "bilateral hip replacement[] was medically inappropriate because given Plaintiff's young age of 41 years, it would be require[d] to be revised within 10 to 15 years at best." Dr. Ivens further concluded that "the hip replacement procedure itself is very painful, recovery is painful, and there is no guarantee that Plaintiff would not continue to experience associated hip pain after the procedure."

Plaintiff presents no medical evidence contradicting that detailed above. Plaintiff also presents no evidence contradicting the assertions offered by Defendant Ivens in his affidavit. While Plaintiff has submitted an affidavit such contains no factual assertions which contradict the evidence submitted by Defendant Ivens. (Dkt. #94, Exhibit B). In fact, Plaintiff's affidavit consists primarily of opinion and legal argument neither of which advance Plaintiff's position.

As Defendant Ivens maintains in his affidavit, his decision in this matter was based upon his professional medical judgment and his review of the then existing medical evidence. Based on the

evidence available to Defendant Ivens, his determination was not unreasonable and falls far short of evidencing deliberate indifference. In sum, the record demonstrates, that Plaintiff simply disagrees with Defendant Ivens' professional medical judgment and, at most, that Defendant Ivens committed malpractice neither of which is sufficient to maintain an Eighth Amendment denial of medical treatment claim. Accordingly, the undersigned recommends that Defendant Ivens is entitled to summary judgment.

## **CONCLUSION**

For the reasons articulated herein, the undersigned recommends that Defendant Ivens' Motion for Summary Judgment, (Dkt. #86), be **granted** and this matter terminated.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: June 12, 2014     /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge